IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL D. PRICE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIV. ACTION NO: _____ |
| v. | § | |
| | § | |
| UNITED WAY OF TARRANT COUNTY, | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES JUDGE

Plaintiff Michael D. Price ("Plaintiff" or "Price") files this Original Complaint against Defendant United Way of Tarrant County ("Defendant" or "United Way"), for unlawful race discrimination and retaliation in violation of 42 U.S.C. § 1981 as follows:

## I.
## PARTIES

1.   Plaintiff Michael D. Price is a sixty-year old African-American citizen who resides in Tarrant County, Texas, and was an Executive employee with Defendant for fifteen years, most recently until he was abruptly terminated on June 30, 2017.  Plaintiff alleges, *inter alia*, that he experienced discrimination on the basis of his race and age, and was retaliated against for participating in an investigation of an African-American colleague's complaints of race and age discrimination by Defendant and its employees.

2.   Defendant is a domestic non-profit corporation with its principal place of business in Tarrant County, Texas. Defendant may be served by serving its registered agent, Benton Clark, at its registered address and principal place of business, 1500 Main Street, Suite 200, Fort

Worth, Texas.  At all relevant times, Defendant has continuously been an employer under Section 1981 and Title VII.

## II.
## JURISDICTION & VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).  This action arises under and is brought pursuant to 42 U.S.C. § 1981.

4. Price has exhausted his administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") on October 5, 2017.  The EEOC issued a Notice of Right to Sue on December 8, 2017, which Price received on December 15, 2017. The TWC has not issued a Notice of Right to Sue on Plaintiff's Charge, and Plaintiff expressly reserves the right to amend this his Original Complaint to assert claims under Chapter 21 of the Texas Labor Code upon receipt of his Notice of Right to Sue from the TWC, or upon the expiration of 180 days from the date of the filing of his Charge with the TWC.

5. Venue is proper in the U.S. District Court for the Northern District of Texas, Dallas Division, pursuant to 42 U.S.C. § 2000e(5)(f)(3) because it is the judicial district in the state in which the unlawful employment practices complained of are alleged to have been committed, the judicial district in which the employment records relevant to such practice are maintained and administered, and the judicial district in which the aggrieved person worked or would have worked but for the alleged unlawful employment practice.  Venue is further proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.
## NATURE OF THE CLAIM

6. Price seeks actual, compensatory and exemplary damages for Defendant's discrimination against him based on his race and for retaliating against him for opposing race discrimination in violation of Section 1981.

## IV.
## BACKGROUND FACTS

7. Price is a sixty-year old African-American IT Executive with over twenty years of industry experience. Price was hired by Defendant in June of 2002, where he was most recently employed as its Vice President of Information Technology and Chief Security Officer until he was abruptly terminated and replaced by a thirty-six year-old white male with no IT experience on June 30, 2017.

8. Price was terminated despite his fifteen-years of dedication to Defendant and related experience and a record of strong performance. Prior to his termination, Price had never been disciplined. Price had a stellar performance record and was highly regarded by his peers. Nevertheless, Defendant opted for youth over experience and its preference for white Executive Team leadership without respect to Price's qualifications and job performance.

9. While abrupt, Price's termination came as no surprise. During the past two years of his employment with Defendant, Price witnessed the systematic purging of experienced African-American senior leadership, and in particular African-American women. Price's termination was merely the most recent in a series of discriminatory and retaliatory actions by Defendant's Executive Leadership Team. Indeed, since April 2016 three of the five African-American employees on the Senior or Executive Leadership Team have been replaced by white employees. Since Price's termination, only one African-American executive remains employed

by Defendant, who was hired despite having no experience in fundraising to replace an African-American executive in response to her filing an EEOC Charge and lawsuit against Defendant for race discrimination.

10. During his employment with Defendant, Price attended meetings where Defendant's CEO Tim McKinney ("McKinney") made ageist comments regarding employees who were aspiring to be promoted or serve on committees. Price himself was denied a request to participate on a web-based technology committee despite the fact that he was head of Information Technology and was told by McKinney, "no one over 50 will be on this committee." When a fifty-six year old African-American female executive expressed interest in the CEO position, McKinney stated "isn't she is too old?"

11. Price also attended a meeting where the Executive Leadership Team was discussing its plans to eliminate job positions in an effort to save money after Defendant began experiencing drastic reduction in fundraising. The Executive Leadership Team began that meeting by identifying all employees with over twenty years of experience, without respect to their job duties, roles within the organization or salary, stating they would offer each of those employees a severance package. At that time, Price complained that the Executive Team's identification of these employees, all of whom were over forty years of age, without any analysis of redundancies, the job functions or the dollars to be saved by eliminating each position, simply because of their years of experience, would be the makings of an age discrimination claim. The Executive Leadership then explained to Price, "that's what the severance packages are for."

12. Following this meeting, at least six African-American female employees over forty were offered severance packages to leave their employment with Defendant. Defendant then privately and secretly asked four of the six employees to stay.

13. Also during Price's employment, several female staff members, all of whom were over age forty, filed harassment complaints against Britton Pavlic ("Pavlic"), a white male manager. Defendant's Chief Operating Officer and Chief Development Officer T.D. Smyers ("Smyers") and McKinney actively interfered with Human Resources' investigation of the complaints, the complaints were summarily dismissed by Smyers, and Defendant failed to reprimand Pavlic or to protect these staff members from retaliation by Pavlic.

14. By contrast, when two employees submitted complaints against Marilyn Jones ("Jones"), an African-American female Executive over the age of 40, Smyers and McKinney immediately attempted to launch an investigation and usurped the Vice President of Human Resources Coneisha Sherrod's (also African-American) ("Sherrod") ability to properly conduct the investigation in accordance with Defendant's policies.

15. Defendant's preference for white males and culture of discrimination was also made clear by the Executive Leadership Team's exclusion of Price and the only other African-American male executive from executive meetings; Chief Financial Officer Brandon Booker's ("Booker") comment to Price that "Hitler had some good ideas;" and emails between and among executives and prominent community leaders including sexist and racist memes[1] and videos such as "The 2nd Annual Ferguson Games."[2]

16. Price was paid substantially less than white executives who also held a "Chief" title. While Defendant continuously promised Price pay increases for taking on additional responsibilities and a "Chief" title, Price did not receive an increase in pay. Further, despite that

---

[1] Attached hereto as **Exhibit A**.
[2] *Available at* https://safeshare.tv/x/FvVTVikOSz (attempting to "spoof" images and videos of confrontations between police officers and African-Americans as a sporting game, and includes statements such as "next year's games will be brought to you by Travon Martin Hoodies. Remember they only come in two colors: "Michael Brown" and "Freddie Gray".) *Last visited Jan. 26, 2018.*

Defendant represented to Price that there was insufficient funding to give Price a raise, white Executives with less experience received salary increases and bonuses.

16.     In addition to discriminating against African-American and older employees, Defendant has a pattern and practice of retaliating against African-American employees, including Price, for complaining of discrimination and participating in investigations of complaints of discrimination and retaliation.

17.     When Jones complained internally and to the EEOC about disparate treatment, including pay disparities between Jones and other, younger, white male employees, and being denied the opportunity to be considered for the CEO position, she began experiencing retaliation from Defendant. Jones was given a negative performance review, and she was effectively demoted when she was required to begin reporting to a peer on the Executive Team rather than to the CEO like previous, white Executive Vice Presidents. McKinney told Price on numerous occasions that if Jones filed a lawsuit against Defendant, it would be the "kiss of death to her career." Jones did file a lawsuit and was severed from the organization thereafter.

18.     Similarly, when Sherrod complained of the disparate treatment between Executive Leadership's response to complaints against white males and complaints against Jones, and its interference with Sherrod's ability to conduct a proper, unbiased investigation of the discrimination complaints, she was effectively demoted, and Smyers usurped her authority to conduct an investigation. Sherrod elevated her complaint to the EEOC and was terminated less than two months later.

19.     Price engaged in protected activity when he opposed Defendant's age and race discrimination, when he and Sherrod called the EEOC to make Sherrod's complaint, and when he actively participated in the investigations of Jones's and Sherrod's complaints. Indeed, as

Vice President of Information Technology and Chief Security Officer, Price was tasked with gathering emails relating to Jones's and Sherrod's complaint (per leadership's request and pursuant to policy). Consequently, Price was the next target for Defendant's discriminatory and retaliatory tactics.

20.     In March 2017, Price was notified that there would be a "third party" investigation due to a purported "security breach" in technology. Price was denied the details of this supposed breach and the investigation despite that it was Price's job to investigate and report such breaches. When the so-called investigation was initiated, Smyers and McKinney called one of Price's white subordinates into the office to assure him that he would not lose his job in connection with the investigation. Price received no such assurances. The purported breach and subsequent investigation was discussed with the Board of Directors despite that the complaints against other Executives had never been elevated to the Board. Clearly, leadership elevated the "investigation" to the Board in an effort to poison the well, taint Price's performance record and lay the groundwork for his termination. In reality, the "investigation" was a pretext for unlawful discrimination and retaliation against Price as it revealed no improprieties or deficiencies on Price's part. As the McKinney put it, "I don't blame you if you're pissed off, but nothing came of it."

21.     During this same time, Sherrod filed a lawsuit against Defendant, and Jones settled her lawsuit against Defendant. Executive leaders knew that Price supported Sherrod and Jones in their lawsuits against Defendant because Price told the Executive Leadership Team that it had a serious problem with the cultural environment, and that Jones was blatantly being discriminated against.

22.    Just weeks later, Smyers and McKinney notified Price that they were intending to "outsource" the entire IT Division and would be entertaining a bid for the services and job duties Price performed. Price was then excluded from this secret bidding process altogether, despite that Price was the only person with knowledge of the economics and job duties associated with IT and IT security. This alleged "outsourcing" was also pretext for unlawful discrimination and retaliation. The purported company to which Price's job would be outsourced was in reality Booker's brother-in-law (a white male). Moreover, while Executive leadership claimed to be outsourcing Price's entire department, Defendant retained a younger, white female employee with less than one year of IT experience whom Price himself had recently trained. To add insult to injury, leadership then demanded that Price train Booker, a thirty-six year old white male with no experience.

23.    Ultimately, the IT Division and the role of oversight for IT matters which Price previously held was not outsourced. Instead, McKinney named Booker as the responsible party over the IT Division, replacing Price in his role as the employee primarily responsible for Defendant's IT Division, and outsourced certain functions to Booker's brother-in-law. Upon information and belief, Defendant offered a contract for services to and/or has contracted with the entity with whom Booker's brother-in-law associates to provide certain IT functions. No such contractual opportunity was offered to Price despite his decades of experience and fifteen years of service to Defendant.

V.
**CAUSES OF ACTION**

**A)    Race Discrimination in Violation of 42 U.S.C. § 1981**

24.    Price incorporates the preceding paragraphs as if fully stated herein.

25. Section 1981 provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. This law entitles a person of color to equal opportunity and treatment in employment. Thus, when an employer acts adversely against a person of color or because of that person's race, the law has been violated and the person of color may file suit and recover damages.

26. Price was qualified for the position he held as Vice President of Information Technology for Defendant, and was subjected to discrimination based on his race and color, and the discrimination complained of altered a term, condition or privilege of his employment in violation of Section 1981. Similarly situated white individuals were treated more favorably under nearly identical circumstances. Among other things, similarly situated white individuals were provided a contract by Defendant, when Price was refused the same opportunity. Defendant has no legitimate, non-discriminatory reason for its actions against Price, and the reasons it offered to Price were pretext for unlawful discrimination.

27. By the conduct described, Defendant deprived Price of the same rights as enjoyed by white employees to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment with Defendant in violation of 42 U.S.C. § 1981.

28. Defendant's wrongful acts and the conduct of its agents and/or employees acting within the scope and course of their employment have been the proximate cause of Price's injuries.

29. As a further result of Defendant's unlawful conduct, Price has suffered and expects to suffer pecuniary losses, including, but not limited to lost wages and other employment

benefits, damage to professional and personal reputation, undue stress, anxiety, and other non-pecuniary losses. As such, Price seeks actual and compensatory damages.

30. Additionally, Price seeks equitable relief necessary to return him to the position that he would have held but for Defendant's unlawful conduct.

31. Defendant acted intentionally, with malice and/or reckless indifference to Price's rights; therefore, Price is entitled to punitive damages.

32. Defendant's discriminatory conduct forced Price to retain the assistance of counsel in order to redress the harms inflicted upon him. Consequently, Price seeks reasonable attorneys' fees, expert fees, and court costs, including on appeal, if necessary.

**B)   Retaliation in Violation of 42 U.S.C. § 1981 *et seq*.**

33. Price incorporates the preceding paragraphs as if fully stated herein.

34. Price is entitled to file suit and recover damages under Section 1981 for retaliation for opposing violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

35. Price has suffered tangible adverse employment actions in relation for engaging in activity protected under Section 1981, namely, speaking out against race and color discrimination suffered by others and for participating in investigations of race and color discrimination against Jones and Sherrod. Among other actions, Defendant ultimately terminated Price in violation of Section 1981. Defendant has no legitimate, non-retaliatory reasons for its actions against Price, and the reasons it offered to Price were pretext for unlawful retaliation.

36. Defendant's wrongful acts and the conduct of its agents and/or employees acting within the scope and course of their employment have been the proximate cause of Price's injuries.

37. As a further result of Defendant's unlawful conduct, Price has suffered and expects to suffer pecuniary losses, including, but not limited to lost wages and other employment benefits, damage to professional and personal reputation, undue stress, anxiety, and other non-pecuniary losses. As such, Price seeks actual and compensatory damages.

38. Defendant's wrongful acts and the conduct of its agents and/or employees acting within the scope and course of their employment have been the proximate cause of Price's injuries.

39. As a result of Defendant's unlawful conduct, Price has suffered and expects to suffer pecuniary losses, including, but not limited to lost wages and other employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, and other non-pecuniary losses. As such, Price seeks actual and compensatory damages. Additionally, Price seeks equitable relief necessary to return him to the position that he would have held but for Defendant's unlawful conduct.

40. Defendant acted intentionally, with malice and/or reckless indifference to Price's rights; therefore, Price is entitled to punitive damages.

41. Defendant's discriminatory conduct forced Price to retain the assistance of counsel in order to redress the harms inflicted upon him. Consequently, Price seeks reasonable attorneys' fees, expert fees, and court costs, including on appeal, if necessary.

## VI.
## JURY DEMAND

42. Price hereby demands a trial by jury.

## VII.
## PRAYER

Plaintiff, Michael D. Price, requests that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered in favor of Plaintiff against Defendant awarding him the following: back pay, equitable relief necessary to place Price in the position that he would have held but for Defendant's discrimination and retaliation and, if reinstatement is not feasible, front pay through the date of retirement; actual damages; compensatory damages; and punitive damages, together with pre-judgment interest (from the date of injury through the date of judgment) and post-judgment interest at the maximum rate allowed by law, attorney's fees, expert fees and costs of court, and such other and further relief to which Plaintiff may be entitled in law or equity.

Dated: January 26, 2018                              Respectfully submitted,

                                                     /s/ Courtney Barksdale Perez
                                                     E. Leon Carter
                                                     Texas Bar No. 03914300
                                                     lcarter@carterscholer.com
                                                     Courtney Barksdale Perez
                                                     Texas Bar No. 24061135
                                                     cperez@carterscholer.com
                                                     **CARTER SCHOLER PLLC**
                                                     8150 N. Central Expressway
                                                     Suite 500
                                                     Dallas, Texas 75206
                                                     (214) 550-5052 (phone)
                                                     (214) 550-8185 (fax)

                                                     **ATTORNEYS FOR PLAINTIFF
                                                     MICHAEL D. PRICE**

**From:** ▮
**To:** ▮ Tim McKinney <Tim.McKinney@unitedwaytarrant.org>; ▮
**Sent:** Thursday, May 19, 2016 10:53 AM
**Subject:** FW: Some good ones

EXHIBIT A



