IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 1 8 2019
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| MICHAEL D. PRICE, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | NO. 4:18-CV-057-A |
| § | |
| UNITED WAY OF TARRANT COUNTY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, United Way of Tarrant County, for summary judgment. The court, having considered the motion, the response of plaintiff, Michael D. Price, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

## Plaintiff's Claims

The operative pleading is plaintiff's second amended original complaint filed August 17, 2018. Doc.[1] 27. In it, plaintiff alleges that he is a sixty-year-old African-American information technology executive with over twenty years of industry experience. He was hired by defendant in June of 2002 and was employed as its vice president of information technology and chief security officer until June 30, 2017, when he was abruptly terminated. Id. ¶ 7.

---

[1] The "Doc.___" reference is to the number of the item on the docket in this action.

Plaintiff asserts claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981 and for age discrimination in violation of Chapter 21 of the Texas Labor Code.

II.

Grounds of the Motion

Defendant says that plaintiff is unable to establish a prima facie case of race or age discrimination or retaliation. And, further, even if he could, he cannot show that defendant's reason for its actions was pretext for discrimination or retaliation.

III.

Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.² Celotex Corp., 477 U.S. at 323. If the record taken as a

---

²In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Facts Established By Summary Judgment Evidence

Tracy D. Smyers ("Smyers") is president and chief executive officer of defendant and has served in that role since July 1, 2017. He is a fifty-six year old white male. He was hired in October 2015 to become defendant's executive vice president and succeed Tim McKinney ("McKinney"), then president and chief executive officer, who had announced that he planned to retire by June 30, 2017. Doc. 42 at 105. When Smyers was hired, defendant was experiencing a slow but steady decline in donations. One of his primary mandates was to assess operations and develop a strategy for revitalizing defendant's finances and community impact. Id. at 106.

Defendant's fiscal year runs from July 1 through June 30. In the 4th quarter of 2017 (around March 2017), defendant realized that it was going to miss budget by a significant amount. Smyers worked with Brandon Booker ("Booker"), chief financial officer,

---

[2](...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

to find ways to cut expenses.³ Doc. 42 at 1-2; 106. Working with department heads, Smyers and Booker proposed making over $300,000 in expense reductions and cutting $1,000,000 in allocations to defendant's partner organizations. Id. at 2; 106. Defendant's board of directors rejected the proposal, instructing that internal expenses should be reduced instead of cutting allocations. Id. Booker determined that significant savings might be achieved by cutting a call-center (referred to as "2-1-1") and outsourcing the IT functions. Id. Smyers and Booker decided to pursue bids from IT companies, receiving 3 or 4 bids. They discussed the idea with plaintiff and understood that plaintiff was considering forming a company to bid on the work.⁴ Consequently, plaintiff was eliminated from the process of vetting potential bids. Plaintiff did not submit a bid himself. Id. He did solicit and submit at least one bid from a potential vendor. Id. at 2.

One of defendant's board members led Booker to work with Carline Marlow, another IT director. She recommended that defendant select TriQuest Technologies to do the IT work. Doc. 42

---

³Booker, a white male born in 1981, served as chief financial officer from July 1, 2015, through December 1, 2017. Doc. 42 at 1.

⁴Plaintiff had earlier discussed a plan to lower IT costs, which he described as "insourcing." Doc. 42 at 151-53. Plaintiff assumed from the wording of an email Smyers sent him in April 2017 that Smyers was referencing this idea for lowering costs. Id. at 153.

at 2. Defendant entered into an agreement with TriQuest.[5] Id. at 2; 106. Defendant saved at least $100,000 per year as a result of the outsourcing of IT. Id. Defendant's IT department, including plaintiff and two younger white male employees[6], was laid off as of June 30, 2017. Id. at 3. The only operational function previously performed in the IT department that was not outsourced concerned "eWay," a program that supported fundraising efforts of defendant's resource development department. A forty-six year old white female employee, Erin Bolden, who was primarily responsible for the eWay program was retained and transferred to the resource development department.[7] She had no role in providing IT support or services following the move. Id. at 3; 122. Booker administered the IT contract with TriQuest; he did not perform any IT functions.[8] Id. at 3; 107. Following the outsourcing of the IT department, there were no open positions for which plaintiff qualified and there were no positions similar to the role he formerly held. Id. at 107. Defendant's reduction in force included just under thirty employees. Id. at 122.

---

[5] Contrary to the allegation of plaintiff's complaint, Booker had no family connection with TriQuest. Doc. 42 at 3.

[6] The white males were ages 42 and 24. Doc. 42 at 122.

[7] Her salary at the time was $48,662; plaintiff's salary was $113,800. Doc. 42 at 122-23.

[8] Plaintiff has no personal knowledge of what Booker has been doing relative to IT functions since July 1, 2017, when he was terminated. Doc. 42 at 163.

Plaintiff got along well with Smyers, but something--plaintiff did not know what it was--turned Smyers against him. Doc. 54 at APP 24. At "that little flipping point," Smyers started treating plaintiff totally differently. Id. APP 24, APP 26. The change started in March 2017 when McKinney sent plaintiff an email saying that there had been a security breach of defendant's mail server. Id. APP 27-28, APP 542. McKinney told another member of the IT department that "after discussing it with the lawyers he felt he had no choice but to do an investigation." Id. at APP 678. (The allegation was that plaintiff provided copies of emails to other executive team members who requested them. Doc. 72 at 76. The allegation was not proved, id. at 77, although plaintiff admitted that he had accessed emails for others in the past, Doc. 42 at 170.)

V.

Analysis

To establish a prima facie case of discrimination in a reduction in force case, plaintiff must show that: (1) he is within the protected group; (2) he has been adversely affected by defendant's decision; (3) he was qualified to assume another position at the time of his discharge; and (4) there is evidence, direct or circumstantial, from which a factfinder might reasonably conclude that defendant intended to discriminate in

7

reaching the decision at issue. Quintana v. Fujifilm N. Am. Corp., 96 F. Supp. 3d 601, 613 (N.D. Tex. 2015). In a case like this, where the plaintiff has not been replaced, he can establish the fourth element by showing that members outside the protected class remained in similar positions after the reduction in force. Id. at 614. If plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. Id. at 611-12. Plaintiff must then make an ultimate showing of discrimination, either showing that the reason stated by defendant was a pretext for discrimination or that defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor. Id. at 612.

Here, plaintiff argues both that he was qualified to assume another position and that someone outside the protected class remained in a similar position after the reduction in force. His arguments center around Bolden, the woman who was retained to run the eWay program, and Booker. But, to satisfy the "qualified to assume another position" prong of the prima facie case, plaintiff must show that there was a vacant position he could have filled. Glick v. Greatwide Logistics Servs., L.L.C., No. 3:12-CV-246-L, 2013 WL 2355398, at *7 (N.D. Tex. May 29, 2013). Bolden was not

transferred to an open position; rather, the duties she performed were moved to a different department, i.e., they were not outsourced as the IT responsibilities were. Bolden continued her work with eWay and did not perform other tasks previously performed by the IT department. Defendant was not required to "bump" Bolden in order to retain plaintiff. <u>Walther v. Lone Star Gas Co.</u>, 952 F.2d 119, 123 (5th Cir. 1992). Further, Bolden's duties were in no way comparable to plaintiff's.

Plaintiff argues that Booker took over plaintiff's responsibilities after the IT department was outsourced, but the evidence does not support his position. Booker merely took on the additional duty of overseeing the contract with the IT vendor after the reduction in force. And, in any event, Booker was the chief financial officer of defendant and there can be (and has been) no argument that plaintiff was qualified to take over those responsibilities.

A reduction in force is presumptively a legitimate, nondiscriminatory reason for a discharge. <u>E.E.O.C. v. Texas Instruments, Inc.</u>, 100 F.3d 1173, 1181 (5th Cir. 1996). Thus, even if plaintiff could make out a <u>prima facie</u> case, the burden would be on plaintiff to show that age or race was a motivating factor for his discharge. See <u>Quintana</u>, 96 F. Supp. 3d at 615-16. Plaintiff argues that defendant intended to discriminate against

him in its decision to outsource the IT department, but the evidence he cites is conclusory and speculative. For example, plaintiff says that on May 1, 2017, he told McKinney that having Smyers replace McKinney "was not going to work due to Smyers' history," Doc. 53 at 4, but he does not cite evidence of the history to which he refers or how it is relevant to the claims he is making. Further, plaintiff says he attended meetings when McKinney made ageist comments but he does not show when those comments were made. Id. at 6. Plaintiff says he complained that he was being underpaid compared to white executives, but his citations do not support that contention. Id. at 9. In fact, when asked if he specifically complained that he was being paid unfairly because of his race, plaintiff testified that, "No. I didn't go there . . ." Doc. 42 at 168. He then began testifying about discussions in July 2016, a year before the reduction in force, about cultural problems. Id. Plaintiff speculated that Smyers and McKinney had been notified that plaintiff assisted another employee in calling the EEOC, Doc. 54 at APP 29, but when asked if he informed defendant about his repeated communications with EEOC, he only identified other minorities and not McKinney or Smyers or Booker.[9] Id. at APP 33-34. In sum, plaintiff has

---

[9] Plaintiff did identify a board member, Doc. 54 at APP 34, but said that the board member had been asked to inquire further but never did. Doc. 42 at 159.

failed to cite probative evidence to show that discrimination was a motivating factor in defendant's decision to outsource the IT department. Reed v. Neopost USA, Inc., 701 F.3d 434, 439-40 (5th Cir. 2012); Quintana, 96 F. Supp. 3d at 615-16.

To establish a prima facie case of retaliation, plaintiff must show that:(1) he engaged in protected activity under § 1981; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). "Protected activity" means any practice rendered unlawful, including making a charge, testifying, assisting, or participating in any investigation, hearing or proceeding. Lopez v. Kempthorne, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010). For there to be a causal connection, the employer must know about the employee's protected activity. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003). Temporal proximity between the protected activity and the adverse employment action, by itself, is insufficient to create a genuine issue of material fact as to causation. Lopez, 684 F. Supp. 2d at 863 (citing cases). Once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, plaintiff must offer some evidence from which to infer that retaliation was the real motive. McCoy, 492 F.3d at 562. That is, plainntiff must

prove that the adverse employment action would not have occurred but for the protected activity. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

In this case, plaintiff has not shown that he engaged in protected activity of which any decision-maker was aware in such proximity to the outsourcing of the IT department that a genuine fact issue as to a discriminatory connection between the two would exist. Bell v. Bank of Am., 171 F. App'x 442, 444 (5th Cir. 2006); Crevier-Gerukos v. Eisai, Inc., No. CV H-11-0434, 2013 WL 12137089, at *7 (S.D. Tex. June 24, 2013). As noted, supra, although plaintiff may have communicated with the EEOC on numerous occasions or engaged in other protected activity, he has not shown that any decision-maker was aware of his activities. (The court is not persuaded that plaintiff's having assisted in discovery on behalf of defendant as part of his job duties is the kind of participation defined by the statute.) But, even if plaintiff had been able to make out a prima facie case of retaliation, he has not shown that but for his protected activity the IT department would not have been outsourced and plaintiff would not have lost his job.

VI.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendant; and that such claims be, and are hereby, dismissed.

SIGNED January 18, 2019.

_____
JOHN McBRYDE
United States District Judge